**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Brian Keith Bass,<br><br>Debtor(s). | C/A No. 25-00271-EG<br><br>Adv. Pro. No. 25-80062-EG |
| Janet B. Haigler, Trustee,<br><br>Plaintiff(s),<br><br>v.<br><br>Karolee Russell,<br><br>Defendant(s). | Chapter 7<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

**THIS MATTER** is before the Court on cross-motions for summary judgment filed by the Plaintiff, Janet B. Haigler, Chapter 7 Trustee in the case of Brian Keith Bass (the "Trustee"), and Defendant Karolee Russell ("Russell"). This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (K), and the Court has statutory authority to enter a final judgment.[1] Having reviewed the pleadings and considered the arguments of the parties, for the reasons set forth below, the Court (1) denies the Trustee's motion for summary judgment ("Trustee's Motion") as to the first and second causes of action; (2) grants the Trustee's Motion as to Russell's counterclaim; (3) and denies Russell's cross-motion for summary judgment ("Russell's Motion").

## PROCEDURAL BACKGROUND

On August 6, 2026, the parties filed a Status Report informing the Court that they had reached agreement on a Joint Stipulation of Facts and Issues to Be Decided, including stipulated

[1] In their pleadings, the parties indicated their agreement for this Court to enter final judgment.

joint exhibits 1-8 (the "Joint Stipulation"), and that no genuine issues of material fact remain requiring trial.[2] The Court entered a scheduling order on August 6, 2026, setting a deadline of August 21, 2026, for the parties to file motions for summary judgment and September 4, 2026 for the filing of objections or responses.[3] The Trustee's Motion was filed on August 21, 2026.[4] Russell's Motion was filed on September 2, 2026.[5]

On September 8, 2026, the Court entered an order setting a deadline for the filing of any further pleadings in support or opposition to the motions and scheduling a hearing for oral arguments.[6] The Trustee filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment,[7] and Russell filed a Memorandum in Support for Summary Judgment and Opposing Plaintiff's Motion for Summary Judgment.[8] The Court conducted a hearing on the motions on September 29, 2026, at which the Trustee, her counsel, and counsel for Russell appeared.

## FINDINGS OF FACT

The parties have stipulated as to the following facts, some of which are drawn from the exhibits attached to the Joint Stipulation:[9]

On October 14, 2015, Brian Keith Bass ("Debtor") formed Triple L Group, LLC ("Triple L") and registered Triple L with the South Carolina Secretary of State's Office.[10] Debtor is the sole member of Triple L.[11]

---

[2] ECF No. 23.
[3] ECF No. 24.
[4] ECF No. 26.
[5] ECF No. 27.
[6] ECF No. 28. In that Order, the Court noted that no objections had been filed to the respective motions for summary judgment and it was unclear whether Russell's Motion, filed after the deadline for motions, was intended as a response to the Trustee's Motion. At the hearing, the parties clarified that they intended to proceed on the pleadings as cross-motions for summary judgment.
[7] ECF No. 30.
[8] ECF No. 31.
[9] ECF No. 23, filed Aug. 6, 2026.
[10] Joint Ex. 4.
[11] In the Joint Stipulation, the parties stated that Debtor formed Triple L on October 15, 2015; however, the Articles of Organization for Triple L, provided as Joint Exhibit 4, are dated October 14, 2015.

By Quitclaim Deed executed on March 14, 2016, Debtor conveyed the real property with the address of Parcel 4 Otis Road, Pelion, SC 29123, TMS #010700-02-052 (the "Parcel 4 Property") to Triple L for $1.00 and/or other valuable consideration.[12] On the same date, Debtor also conveyed the real property at 111 Windill Lane, West Columbia, SC 29172 (TMS #007925-01-004) (the "Windill Property") and at 251 Otis Road, Pelion, SC 29123 (TMS #010700-02-029) (the "251 Otis Property") to Triple L for $1.00 and/or other valuable consideration.[13]

On May 9, 2018, Plaintiffs Kevin Russell and Karolee Russell ("Plaintiffs") filed a Summons and Complaint in the Court of Common Pleas for Spartanburg County (the "State Court"), commencing Case No. 2018-CP-42-01540, against Defendants B&R Contracting, LLC, Brian K. Bass, and Richard A. Robertson.[14] The Complaint alleges claims for breach of contract, fraud, breach of contract accompanied by fraudulent act, conversion, civil conspiracy and unfair trade practices. Debtor is also the sole owner of B&R Contracting, LLC, a separate limited liability company.[15] The claims arose from a contract entered into on or about October 10, 2016, for the construction of a home on Plaintiffs' property located in Spartanburg County. Kevin Russell subsequently passed away and Karolee Russell ("Russell") proceeded with the litigation in her individual capacity and as personal representative of the Estate of Kevin Brian Russell.

On May 25, 2022, Russell obtained a final judgment in the State Court against Debtor and B&R Contracting, LLC in the amount of $106,759.44 (the "Judgment").[16] The Judgment was recorded in Lexington County, South Carolina, on May 26, 2022, in Case No. 2022-CP-32-01805. Russell subsequently commenced Supplemental Proceedings in Lexington County to collect the

[12] Joint Ex. 5.
[13] Joint Ex. 6.
[14] Joint Ex. 3.
[15] Joint Ex. 7.
[16] Joint Ex. 1.

Judgment. On October 23, 2024, the Lexington County court entered an order pursuant to S.C. Code Ann. § 33-44-504 granting Russell a charging lien against Debtor's distributional interest in B&R Contracting, LLC, BKB Construction, LLC, and Triple L (the "Charging Order").[17] The Charging Order prohibited Debtor from "selling, disposing, encumbering, conveying, or transferring any of the property or assets owned by B&R Contracting, LLC, BKB Construction, LLC, or Triple L Group, LLC, or any portion of his membership interest in B&R Contracting, LLC, BKB Construction, LLC, or Triple L Group, LLC without prior written notice to [Russell's] counsel and prior written approval of [the Lexington County court]."

Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on January 27, 2025 (the "Petition Date"). As of the Petition Date, Triple L owned the Parcel 4 Property and the 251 Otis Property (collectively, the "Otis Road Properties").[18]

On February 25, 2025, Triple L executed a warranty deed conveying the Otis Road Properties to Edison Sanchez (the "Purchaser") in exchange for $55,000.00.[19] The deed was recorded in the Lexington County Register of Deeds on February 26, 2025.[20] The Settlement Statement relating to the sale of the Otis Road Properties identifies Triple L as the Seller and reflects that Triple L received $53,291.01 at closing (the "Proceeds").[21] Debtor thereafter turned over the Proceeds to the Trustee. The Otis Road Properties have a value exceeding $220,000.00.[22]

[17] Joint Ex. 7.
[18] The Windill Property does not appear to have been part of the sale to the Purchaser, and it is unclear from the record whether Triple L still owns it.
[19] Joint Ex. 8.
[20] *Id.*
[21] Compl., Ex. 2, ECF No. 1. Brian K. Bass signed the Settlement Statement on behalf of Triple L Group, LLC, as its Sole Member.
[22] ECF No. 23, Joint Stipulation, ¶10.

On July 2, 2025, Russell filed a proof of claim in Debtor's bankruptcy case ("Russell's Claim"), asserting a secured claim in the amount of $192,186.51, secured by a "Distributional Interest, Triple L Group, LLC (single member)," pursuant to the Charging Order.[23]

**ISSUES TO BE DECIDED**

The Trustee filed the Complaint on November 10, 2025, initiating this adversary proceeding. The Complaint asserts two causes of action: First, the Trustee seeks a declaratory judgment determining the extent, validity, and priority of Russell's interest in the Proceeds. Specifically, the Trustee contends that 11 U.S.C. § 552(a)[24] governs the Charging Order and that the Proceeds are not subject to Russell's charging lien. Second, the Trustee objects to Russell's proof of claim to the extent she seeks a secured interest in the Proceeds.[25] Russell filed an Answer and Counterclaim on December 19, 2025 (the "Counterclaim"), seeking a declaratory judgment that she holds a secured claim in the Proceeds and requesting that the post-petition sale of the Otis Road Properties be set aside on the grounds that it was conducted in bad faith. Russell further alleges that the Trustee should be required to implead the Purchaser in an action to set aside the sale, preserve the Purchaser's rights, and sell the Otis Road Properties at fair market value, or, alternatively, authorize Russell to do so.[26] The Trustee filed an Answer to the Counterclaim on January 15, 2026.[27] The Court entered a Scheduling Order on February 6, 2026.[28] After engaging

---

[23] C/A No. 25-00271, Proof of Claim No. 4-1. Although the parties have not stipulated to this particular fact, pursuant to Fed. R. Evid. 201(b), the Court takes judicial notice of the claim registry in Debtor's bankruptcy case.
[24] In the Complaint, the Trustee incorrectly referenced 11 U.S.C. § 522(a), instead of § 552(a), but later acknowledged in the Motion that this was a typographical error.
[25] ECF No. 1.
[26] ECF No. 5.
[27] ECF No. 10. Upon joint motion of the parties, the Court entered an Order Allowing Late Filed Answer and Late Filed Reply to Counterclaim. ECF No. 14.
[28] ECF No. 24.

in discovery and exchanging settlement proposals, the parties determined that mediation would not be beneficial and the matter could proceed to the summary judgment stage.[29]

In the Joint Stipulation, the parties identified the following issues for the Court's determination on summary judgment:

1. Does Russell hold a secured claim against the Proceeds?

2. Should the Trustee be required to implead the Purchaser and seek to set aside the post-petition sale of the Otis Road Properties on the grounds that it was not an arm's length transaction and/or was made in bad faith?

## Conclusions of Law

### I. *Summary Judgment Standard*

Summary judgment is appropriate only if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[30] "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *In re Washington*, 529 B.R. 654, 662 (Bankr. D.S.C. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When the Court is presented with cross-motions for summary judgment, it must examine each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure. *Fusaro v. Howard*, 19 F.4th 357, 366 (4th Cir. 2021). "In considering a motion for summary judgment, the court construes 'all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party.'" *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 958 (4th Cir. 2022) (quoting *United States v. 8.929 Acres of Land in Arlington Cnty.*, 36 F.4th 240, 252 (4th Cir. 2022)). "Summary judgment is inappropriate if the parties disagree on the inferences

[29] ECF No. 23.
[30] Fed. R. Civ. P. 56(a) is made applicable to this proceeding by Fed. R. Bankr. P. 7056.

that may reasonably be drawn from the undisputed facts and is proper if only one conclusion may reasonably be drawn." *Peterkin v. JPMorgan Chase Bank N.A. (In re Peterkin)*, C/A No. 10-06544-JW, Adv. Pro. No. 16-80041-JW, slip op. (Bankr. D.S.C. Dec. 16, 2016) (citing *Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282 (4th Cir. 1987); *Croft v. Bayview Loan Servicing, LLC*, 166 F. Supp. 3d 638 (D.S.C. 2016) (same)). Summary judgment should be granted "when the evidence is so one-sided that one party must prevail as a matter of law." *Id.* at 959.

The party seeking summary judgment bears the initial burden of demonstrating that there are no material facts in dispute and that it is entitled to judgment as a matter of law. *Celotex Corp v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the moving party makes this threshold showing, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. *Vieira v. Think Tank Logistics, LLC (In re Levesque)*, 650 B.R. 693, 699 (Bankr. D.S.C. 2023) (citing *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)). To do so, the nonmoving party must offer "sufficient proof in the form of admissible evidence" and may not rely solely on her pleadings. *Guessous*, 828 F.3d at 216 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)).

## II. *The Trustee's Motion for Summary Judgment*

Both causes of action in the Trustee's Complaint hinge on whether the Charging Order gives Russell a lien on the Proceeds from the sale of the Otis Road Properties and, if so, whether 11 U.S.C. § 552(a) renders that lien unenforceable against the Proceeds. In the Counterclaim, Russell seeks equitable and declaratory relief in the form of a court order (1) allowing her claim, (2) determining that the Charging Order remains a secured debt against Debtor's distributional interest in Triple L and that Russell is entitled to the Proceeds from the sale of the Otis Road Properties, and (3) directing the Trustee to implead the purchaser of the Otis Road Properties, set

aside the sale to the Purchaser and sell the Otis Road Properties at fair market value. The Trustee seeks summary judgment as to both causes of action as well as to Russell's Counterclaim.

**a.** ***First Cause of Action - Extent, Validity, and Priority of Russell's Claim***

With respect to the first cause of action, the Trustee seeks a declaratory judgment that the Proceeds from the sale of the Otis Road Properties are not subject to Russell's charging lien and may therefore be distributed to Debtor's creditors through the bankruptcy estate, including Russell in her capacity as an unsecured creditor. The Court finds that summary judgment is not appropriate because there is a genuine issue of material fact as to whether the Trustee's rights to the Proceeds are superior to Russell's.

There is no dispute that Russell has a charging lien against the Debtor's distributional interest in Triple L. Moreover, there is no dispute that the State Court Judgement was not against Triple L—rather, it was against Debtor and another one of Debtor's solely owned LLCs. As such, Triple L's assets are not directly subject to Russell's lien. Moreover, Russell's lien technically does not attach to the proceeds of the sale of Triple L's assets until Triple L makes a distribution to Debtor, at which point the lien attaches to the distributional interests pursuant to the Charging Order.

Under South Carolina law, a court may grant a creditor of a member of a limited liability company ("LLC")—such as Debtor in this case—a charging lien against the member's distributional interest in the LLC:

> (a) On application by a judgment creditor of a member of a limited liability company or of a member's transferee, a court having jurisdiction may charge the distributional interest of the judgment debtor to satisfy the judgment. . . .
>
> (b) A charging order constitutes a lien on the judgment debtor's distributional interest. . . The court may order a foreclosure of a lien on a distributional interest subject to the charging order at any time. . . .

S.C. Code Ann. § 33-44-504(a). A charging order is the exclusive remedy under South Carolina law through which a judgment creditor—such as Russell—may satisfy a judgment out of an LLC member's distributional interest. The term "distributional interest" is defined as "all of a member's interest in distributions by the limited liability company." S.C. Code Ann. § 33-44-101(6). In turn, "distribution" is defined as "a transfer of money, property, or other benefit from a limited liability company to a member in the member's capacity as a member or to a transferee of the member's distributional interest." S.C. Code Ann. § 33-44-101(5). Here, the Charging Order expressly granted Russell a charging lien against Debtor's distributional interest in Triple L.

***i. Section 552 Does Not Bar Russell's Judicial Lien from Attaching to the Proceeds***

Russell asserts that the Charging Order is a judicial lien secured by Debtor's distributional interest in Triple L. The Trustee does not dispute that the Charging Order constitutes a judicial lien under the Bankruptcy Code but suggests that the judicial lien should also be considered a prepetition security agreement that Debtor entered into. As such, the Trustee argues that 11 U.S.C. § 552(a) applies to prevent Russell's prepetition lien from attaching to the Proceeds because the Proceeds are property acquired by the estate or by Debtor after the commencement of the case. *See* 11 U.S.C. § 552(a) (providing that "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case").

From the outset, the Trustee's contention as to the effect of § 552(a) is misplaced. The terms "judicial lien" and "security agreement" are separately defined in the Bankruptcy Code. A "security agreement" is defined in § 101(50) as "an agreement that creates or provides for a security interest." 11 U.S.C. § 101(50). A "judicial lien," on the other hand, is defined as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11

U.S.C. § 101(36). A judicial lien is not a security interest created by agreement. The Charging Order resulted from the state court's supplementary proceedings—a judicial process within the definition of § 101(36)—and not from an agreement between Russell and Debtor. *See generally In re Pettine*, 655 B.R. 196, 218 (10th Cir. B.A.P. 2023) (finding that a charging order granted under state law is a type of judicial lien, as that term is defined by the Bankruptcy Code); *In re Kleynerman*, 638 B.R. 111 (Bankr. E.D.Wis. 2022) (treating a charging order as a judicial lien and allowing debtor to reopen bankruptcy case to avoid the lien). The statutory definition alone undermines the Trustee's theory that the Charging Order is a "security agreement."

Courts have determined that § 552(a) applies only to a lien resulting from a security agreement and not to a statutory or judicial lien. *See In re Fin. Oversight and Mgmt. Bd. for Puerto Rico*, 899 F.3d 1, 7 (1st Cir. 2018) (stating that § 552 does not apply to statutory liens); *In re Vargas Moya*, 601 B.R. 845, 859-60 (Bankr. D.P.R. 2019) ("By its terms, section 552(a) only applies to liens resulting from security agreements, not other types of liens such as statutory liens."); *In re R.C.A. Rubber Co.*, No. 16-52757, 2020 WL 1488759, at *6-7 (Bankr. N.D. Ohio Mar. 26, 2020) (observing that § 552 is an exception to the general rule that prepetition liens against the debtor attach to property of the bankruptcy estate and voluntary liens attach to property acquired post-petition only to the extent permitted by § 552(b), while involuntary liens attach based on the governing nonbankruptcy law); *In re Wisner*, No. 16-59003, 2018 WL 4808380, at *9 (Bankr. N.D. Ga. Oct. 2, 2018) (finding that § 552(a) plainly applies to security agreements and does not apply to judicial liens); *see also* 5 COLLIER ON BANKRUPTCY ¶ 552.01 ("Because [§ 552(a)] is grounded in the Bankruptcy Code's definition of 'security interest,' found in section 101, subsection (a) is confined to consensual liens and does not extend to nonconsensual or

statutory liens."). Accordingly, § 552 would not bar Russell's judicial lien from attaching to the Proceeds to the extent those funds represent a distributional interest received from Triple L.[31]

***ii. There is a Material Issue of Fact as to the Nature of the Proceeds***

The issue, then, is how the Proceeds should be characterized. Pursuant to the Charging Order, Russell has a prepetition lien against Debtor's distributional interests in Triple L. A member's distributional interest in a limited liability company is personal property and, subject to S.C. Code Ann. §§ 33-44-502[32] and 33-44-503,[33] may be transferred in whole or in part. *See* § 33-44-501(b); *Levy v. Carolinian, LLC*, 763 S.E.2d 594 (S.C. 2014). A transferee of a distributional interest that does not become a member may receive distributions that otherwise would have gone to the transferor and may receive the net amount otherwise distributable to the transferor upon dissolution and winding up. *See* S.C. Code Ann. §§ 33-44-503.

Thus, Debtor—or the Trustee for that matter—has no property interest in the assets of Triple L unless and until Triple L makes a distribution to Debtor—or the bankruptcy estate—in their capacity as a member or a transferee of Debtor's distributional interest. *See* S.C. Code Ann. § 33-44-501(a) (providing that a member of a limited liability company has no property interest in property owned by a limited liability company); *In re Richburg,* No. 25-01297, 2026 WL 2170497, at *4 (Bankr. D.S.C. July 13, 2026) ("While a debtor's membership interest in an LLC may

[31] Even if § 552(a) applied, § 552(b) provides that a security interest in property created by a prepetition security agreement extends to proceeds of such property to the extent provided by such security agreement "except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise." *See* 11 U.S.C. § 552(b).

[32] This section provides that "[a] transfer of a distributional interest does not entitle the transferee to become or to exercise any rights of a member. A transfer entitles the transferee to receive, to the extent transferred, only the distributions to which the transferor would be entitled." S.C. Code Ann. § 33-44-502.

[33] This section provides that "[a] transferee of a distributional interest may become a member of a limited liability company if and to the extent that the transferor gives the transferee the right in accordance with authority described in the operating agreement or all other members consent;" however, a transferee who does not become a member "is not entitled to participate in the management or conduct of the limited liability company's business, require access to information concerning the company's transactions, or inspect or copy any of the company's records" and shall receive "distributions to which the transferor would otherwise be entitled" and upon dissolution and winding up of the business, "shall receive the net amount otherwise distributable to the transferor." S.C. Code Ann. § 33-44-503.

constitute property of the estate, the assets owned by the LLC do not automatically become property of the debtor's bankruptcy estate."). Said differently, Debtor's membership interest in Triple L is property of the estate. *See* 11 U.S.C. § 541(a)(1) (providing that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."). Upon the filing of a bankruptcy case, the chapter 7 trustee is the successor in interest to the property of the debtor's estate and the legal representative of the estate. 11 U.S.C. § 323(a); *In re Modanlo*, 412 B.R. 715, 724 (Bankr. D. Md. 2006).

In the case of single-member LLCs, some courts have held that a chapter 7 trustee would acquire the full bundle of rights as the LLC's sole member, including the right to control the entity. *In re Zuhlke*, No. 24-40267, 2026 WL 2417116, at *3 (Bankr. D. Neb. Aug. 18, 2026) (holding that where the debtor is the sole member of a limited liability, the chapter 7 trustee succeeds to the full bundle of rights; however, the trustee cannot simply transfer the LLC's assets into the bankruptcy estate without first winding up the LLC with notice to the LLC's creditors and discharging the LLC's debts.); *Levine v. B & R Acquisition Partners*, *LLC,* 674 B.R. 838, 851 (Bankr. N.D.N.Y. 2025) (noting that "numerous courts across the country have concluded that where the bankruptcy estate in a Chapter 7 bankruptcy has a membership interest in a single member LLC, the trustee controls the LLC") (citing cases); *In re Albright*, 291 B.R. 538 (Bankr. D. Colo. 2003) (holding that, under Colorado law, the chapter 7 trustee becomes a substituted member of a single-member LLC upon the member debtor's bankruptcy filing and obtains the right to control the management of the LLC and may cause the LLC to sell its property and distribute net proceeds to the estate, or alternatively, may elect to distribute the LLC's property to the estate and liquidate the property himself). Applied here, this approach would authorize the Trustee to wind up Triple L's business under § 33-44-803, prosecute and defend legal actions and

proceedings, and settle and conclude the LLC's affairs, including the distribution of its assets pursuant to § 33-44-806. *See* S.C. Code Ann. § 33-44-803; 33-44-806.

A trustee's right to control an LLC does not, however, automatically transfer the LLC's assets into the debtor's bankruptcy estate. *See Gallan v. Bloom Business Jets, LLC*, 480 F. Supp. 3d 1173, 1182 (D. Colo. 2020) (finding that the assets of a corporate entity in which an individual debtor holds an interest do not constitute property of the debtor's bankruptcy estate) (citing cases); *Zuhlke*, 2026 WL 2417116, at *3 (same). The Court need not determine at this juncture whether the Trustee's rights extend to management of Triple L. Even if the Trustee acquired such rights, she would remain subject to applicable state-law requirements, which necessitate additional steps before the Proceeds may become property of the bankruptcy estate.

To the extent the Trustee succeeds to Debtor's rights as a member of Triple L, her authority is limited to the powers afforded to a member under South Carolina law and remains subject to the statutory requirements governing the dissolution and winding up of a limited liability company. *Cf. Zuhlke*, 2026 WL 2417116, at *3. Accordingly, under state law, the Trustee, standing in Debtor's shoes, must first satisfy Triple L's creditors before any remaining assets may be distributed to Debtor's bankruptcy estate for the benefit of Debtor's creditors. *See* § 33-44-806.[34] Whether Triple L has outstanding obligations to creditors or other assets available to satisfy those obligations presents a factual issue that could materially affect whether any portion of the Proceeds becomes property of Debtor's bankruptcy estate. Thus, the Court cannot determine on summary judgment whether the Trustee's interest in the Proceeds is superior to Russell's.

---

[34] That section provides that "[i]n winding up a limited liability company's business, the assets of the company must be applied to discharge its obligations to creditors, including members who are creditors. Any surplus must be applied to pay in money the net amount distributable to members in accordance with their right to distributions under subsection (b)." § 33-44-806.

The Trustee maintains that she holds the Proceeds that belong to Triple L. She further argues that Russell's lien has not attached to the Proceeds because Triple L never distributed the funds to Debtor, the Trustee has not consented to compel such a distribution, and no legal obligation requires her to do so.[35] Although the Otis Road Properties and the approximately $53,000.00 generated by their sale initially belonged to Triple L, Debtor subsequently remitted the Proceeds to the Trustee. This raises a distinct issue: whether the Proceeds were properly distributed by Triple L to Debtor or the bankruptcy estate, or whether Debtor instead transferred funds belonging to Triple L to the Trustee without proper authority and in contravention of applicable state law. The gap is material. If Triple L distributed the Proceeds to Debtor, or to the Trustee as successor to Debtor's membership interest, the Proceeds would become property of the bankruptcy estate, subject to Russell's charging lien. Because the amount of the lien exceeds the value of the Proceeds, no portion of the Proceeds would be available for distribution to Debtor's other creditors.[36] If, on the other hand, Triple L, through Debtor, diverted the funds directly to the Trustee without a distribution authorized under applicable LLC law, it is not clear how the Trustee would be entitled to hold them for the benefit of the estate. *See In re Applied Mach. Rentals, LLC*, 670 B.R. 452 (Bankr. W.D.N.C. 2025) (finding that proceeds of a loan incurred by an LLC that were deposited into the manager's account were direct, traceable proceeds of the loan to the LLC and remained property of the LLC with the manager holding such property in trust for the LLC); S.C. Code Ann. § 33-44-409(b).[37]

---

[35] *See* Trustee's Mot. 6 ("But nothing requires the Trustee to have Triple L make a distribution to the Debtor. If the Trustee has control over the management of the LLC, she can decide to not make the distribution to Debtor.").

[36] The Court has no information regarding whether Triple L has any creditors who may have priority over Russell in any distribution.

[37] South Carolina law provides that a member's duty of loyalty to a member-managed company and its other members includes, among other duties, "to account to the company and to hold as trustee for it any property . . . derived by the member in the conduct or winding up of the company's business." S.C. Code Ann. § 33-44-409(b)(1).

The stipulated facts do not establish whether Triple L or the Trustee, in exercising control over Triple L, validly authorized or made a distribution. The record contains no evidence of a resolution authorizing the distribution, any provision of an operating agreement (if one exists) permitting it, any dissolution or winding up proceeding that would necessitate the distribution, or any other action taken by the Trustee to exercise the estate's governance rights to cause Triple L to distribute funds to the bankruptcy estate.[38] These issues of material fact also preclude the Court from granting summary judgment in favor of either party as to whether Russell's lien has attached to the Proceeds. Thus, the Trustee's motion for summary judgment as to the first cause of action is denied.

**b.** ***Second Cause of Action —Objection to Claim***

Russell's Claim asserts a secured claim in the amount of $192,186.51, secured by Debtor's distributional interest in Triple L pursuant to the lien created by the Charging Order. The Trustee seeks disallowance of Russell's Claim as a secured claim.[39] The Complaint does not specify the basis for the Trustee objection to Russell's Claim. For the reasons discussed above, the stipulated facts and exhibits are insufficient to establish whether Russell's lien attached to the Proceeds. Although Russell holds a lien against Debtor's distributional interest in Triple L, she does not hold a lien against Triple L's assets themselves. Because a genuine dispute of material fact remains as to whether a distribution was made to Debtor or the bankruptcy estate that would allow Russell's

[38] The Court further notes that, pursuant to S.C. Code Ann. § 33-44-406, a distribution may not be made if:

> (1) the limited liability company would not be able to pay its debts as they become due in the ordinary course of business; or
>
> (2) the company's total assets would be less than the sum of its total liabilities plus the amount that would be needed, if the company were to be dissolved, wound up, and terminated at the time of the distribution, to satisfy the preferential rights upon dissolution, winding up, and termination of members whose preferential rights are superior to those receiving the distribution.

The record contains insufficient information concerning Triple L's debts and assets for the Court to determine whether a distribution could have been lawfully made under § 33-44-406.

[39] At the hearing, Trustee's counsel stated that the Trustee sought disallowance only as to the secured portion of the claim.

lien to attach to the Proceeds, the Trustee's motion for summary judgment on the objection to Russell's Claim is denied.

***c. Russell's Counterclaim***

In the Answer, Russell asserts that the postpetition sale of the Otis Road Properties was not an arm's length transaction, was made in bad faith, and should be set aside. Russell contends that, after the Petition Date, Debtor sold and disposed of assets on his own accord notwithstanding that 11 U.S.C. § 363(b) authorizes the Trustee to sell property of the estate.

This argument fails to consider the legal distinction between an LLC and its members emphasized above. Under South Carolina law, a limited liability company is a legal entity that is separate and distinct from its members. S.C. Code Ann. § 33-44-201.[40] As discussed above, Triple L, rather than Debtor, sold the Otis Road Properties. Because the properties were owned by Triple L, they were not property of Debtor's bankruptcy estate. *See* § 33-44-501(a). Only Debtor's distributional interest in Triple L became property of the estate upon the filing of the bankruptcy case. Accordingly, although the Charging Order expressly prohibited Debtor from selling or transferring any of Triple L's property, and his conduct appears to have violated that order, neither the Bankruptcy Code nor any order entered by this Court expressly prohibited Triple L, a non-debtor entity, from selling the Otis Road Properties.

In support of her request for an order directing the Trustee to implead the Purchaser and avoid the postpetition sale of Triple L's assets, Russell invokes 11 U.S.C. § 549, which authorizes the avoidance of certain postpetition transfers of property of the bankruptcy estate. Russell's argument fails to account for a critical statutory requirement that is not satisfied here: § 549(a) permits avoidance only of a postpetition transfer of *property of the estate*. 11 U.S.C. § 549(a)

[40] Section 33-44-201 provides an exception for single-member limited liability companies but only with respect to taxation.

("Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—(1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court."). Because Triple L's property was not property of the bankruptcy estate, the Trustee is not authorized under § 549(a) to avoid the sale, and the Court cannot order the Trustee to take action that is contrary to the Bankruptcy Code.

The Trustee asserts that she considered both the 2016 prepetition transfer of the Otis Road Properties from Debtor to Triple L and the 2025 postpetition sale to Purchaser but determined that neither transaction could be avoided under the applicable statutory provisions. Specifically, the Trustee concluded that (a) § 548, which generally applies to transfers made within two years before the petition date, did not provide a basis for avoidance; (b) § 544 and South Carolina's Statute of Elizabeth, codified at S.C. Code Ann. § 27-23-10, were inapplicable because they require a transfer of the debtor's property and a qualified creditor with a valid unsecured claim with standing to challenge the transfer; and (c) § 549 did not apply because it governs postpetition transfers of property of the bankruptcy estate. As the Trustee reasoned, the 2016 transfer of the property to Triple L was made more than two years prior to the filing of the petition; therefore, § 548 is inapplicable. Further, the Trustee asserts that § 544 and S.C. Code Ann. § 27-23-10 do not apply because Russell has not identified any creditor with a valid unsecured claim as of the date of the 2016 transfer. Lastly, as to § 549, which Russell appears to solely rely on, it does not apply to the 2016 transfer because it was prepetition and does not apply to the 2025 postpetition transfer because it was not a transfer of property of the estate. Simply stated, Russell has not advanced a legal basis for the Court to order the Trustee to implead the Purchaser in this action, where the Trustee has evaluated the possible avoidance actions and determined in her discretion not to pursue

such actions. *See SunTrust Bank v. Matson (In re CHN Constr., LLC)*, 531 B.R. 126, 132-33 (Bankr. E.D. Va. 2015) ("The chapter 7 trustee needs to be provided a substantial degree of discretion in determining how to most effectively administer the bankruptcy estate . . . . 'So long as the trustee's decision concerning how or whether to administer an asset or to pursue a cause of action falls within the proper scope of the trustee's business judgment, the trustee's decision should be upheld.'") (quoting *In re Consol. Indus. Corp.*, 330 B.R. 712, 715 (Bankr. N.D. Ind. 2005)).

Similarly, Russell has failed to provide a legal basis to compel the Trustee to pursue a derivative action against the Purchaser. Under South Carolina law, "a member of a limited liability company may maintain an action in the right of the company if the members or managers having authority to do so have refused to commence the action or an effort to cause those members or managers to commence the action is not likely to succeed." S.C. Code § 33-44-1101; *see also* S.C. Code § 33-44-1102 (noting that a plaintiff in a derivative action for a limited liability company must be a member); *Boathouse at Breach Inlet, LLC by & through Stoney v. Stoney*, 900 S.E.2d 483 (S.C. Ct. App. 2024), *reh'g denied* (Apr. 29, 2024), *cert. denied* (Feb. 12, 2025) (holding that under appropriate circumstances, a single member of a limited liability company may fairly and adequately represent the interests of a class of one and have standing to maintain a derivative action). Here, the Trustee stands in the shoes of Debtor as a member of Triple L. The decision whether to pursue an action rests within the Trustee's discretion and depends on consideration of various factors. Moreover, any recovery would be obtained "in the right of the company" and, accordingly, would technically constitute property of Triple L.

Lastly, Russell has not articulated any basis for the Court to allow her to pursue such action. *See SunTrust*, 531 B.R. at 133 (recognizing the general rule that only trustees or debtors in possession, and not creditors can pursue avoidance actions); *McInnis v. Phillips (In re Phillips)*,

573 B.R. 626, 641 (Bankr. E.D.N.C. 2017) (finding that a judgment creditor does not have standing to pursue a § 548 action and that a trustee's decision not to pursue an avoidance claim is within the trustee's fiduciary discretion). The Bankruptcy Code does not expressly permit creditors to initiate adversary proceedings on behalf of the estate. *Baltimore Emergency Servs. II, Corp.*, 432 F.3d 557, 560 (4th Cir. 2005).[41] The Fourth Circuit noted that it has recognized in the analogous chapter 7 context that there is "a public policy interest in reducing the number of ancillary suits that can be brought in the bankruptcy context so as to advance the swift and efficient administration of the bankrupt's estate." *Id.* at 560. Another bankruptcy court within this circuit has stated that it is "questionable at best whether principles of derivative standing . . . even apply in a Chapter 7 case, and indeed, well-reasoned case law in this district finds that it does not." *Mahar v. New Rez LLC (In re Mahar)*, No. 25-72454, Adv. No. 25-07035, 2026 WL 173351, at *9 (Bankr. E.D. Va. Jan. 21, 2026). It is possible that the Charging Order provides Russell with a direct claim and basis to seek relief from the state court through the Lexington County supplementary proceeding for Debtor's alleged violation of the order. For purposes of the issues before this Court, however, Russell, has not established that a violation of the state court's order converts Triple L's property into estate property or authorizes this Court to compel the Trustee to bring an action against the Purchaser—especially one sounding in 11 U.S.C. § 549.

For these reasons, the Court finds that no genuine issue of material fact exists as to Russell's counterclaim and judgment should be granted in favor of the Trustee.

[41] In *Baltimore Emergency*, the Fourth Circuit observed that, in the Chapter 11 context, some other circuits have allowed a creditor or creditor's committee under certain narrow conditions to file an action in bankruptcy court in place of the trustee or the debtor-in-possession under the doctrine of "derivative standing." *Id.* The Fourth Circuit, however, declined to decide whether derivative standing should be allowed, finding that the strict conditions required by the circuits that permit derivative standing had not been met in the case before it. *Id.* at 561.

### III. *Russell's Cross-Motion for Summary Judgment*

Russell argues that Debtor's conveyance was not an arm's-length transaction and the sale price was grossly undervalued in bad faith. Accordingly, Russell seeks a declaratory judgment that (1) her secured claim is allowed, (2) her Charging Order lien constitutes a secured debt against Debtor's distributional interest in Triple L and (3) she is entitled to the Proceeds. Russell does not argue that the Charging Order itself created a direct lien on Triple L's real property. Rather, Russell contends that her lien attached to the Proceeds from the sale of the Otis Road Properties and that the Trustee may not administer Debtor's bankruptcy estate in a manner that extinguishes her prepetition lien against Debtor's distributional interest in Triple L. To establish attachment, Russell would have to demonstrate that the Proceeds represent a distribution from Triple L to Debtor, rather than funds belonging to Triple L that are held by the Trustee. The stipulated facts before the Court are insufficient to make such showing and material questions of fact remain.

Russell also seeks to compel the Trustee to avoid the sale under 11 U.S.C. § 549, but as discussed above, Russell cannot show that Triple L's sale of the Otis Road Properties was a transfer of property of the estate, thus § 549 is not applicable. Russell has not presented any statutory basis for a creditor to compel the Trustee to prosecute an avoidance action as to this transfer. For these reasons, Russell's cross-motion for summary judgment should be denied.

## CONCLUSION

Based on the foregoing, it is hereby ORDERED:

1. The Trustee's motion for summary judgment as to the first and second causes of action in the Complaint is DENIED;

2. The Trustee's motion for summary judgment as to Russell's counterclaim is GRANTED;
3. Russell's cross-motion for summary judgment is DENIED;
4. A pretrial conference will be held before the Court on November 10, 2026, at 2:00 p.m. at the J. Bratton Davis U.S. Bankruptcy Courthouse, 1100 Laurel Street, Columbia, South Carolina 29201.[42]

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**10/13/2026**

Entered: 10/14/2026

Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

[42] The parties should consult before the conference to discuss possible settlement options or whether mediation at this juncture would be helpful to the parties to reach an amicable resolution, especially in light of the amount of the funds available for distribution and the attorney fees that have been incurred to date or that would be incurred moving forward.